IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NBN BROADCASTING, INC., | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) 2:12cv0346<br>) Electronic Filing |
| SHERIDAN BROADCASTING NETWORKS,<br>INC., *et al.*, | )<br>)<br>)<br>) |
| Defendants. | ) |

## OPINION

**Cercone, District Judge**

**I.     Introduction**

This matter is before the court upon a Renewed Motion for Summary Judgment filed by Plaintiff NBN Broadcasting, Inc. ("NBN") (ECF No. 106). In its motion, NBN seeks summary judgment with respect to a counterclaim for breach of fiduciary duty and several affirmative defenses raised by Defendants Sheridan Broadcasting Networks, Inc. ("Sheridan"), Ronald Davenport, Sr. ("Davenport Sr."), Jerry Lopes ("Lopes"), and Ronald Davenport, Jr. ("Davenport Jr.) (collectively, "Defendants") in their Amended Answer (ECF No. 43). For the reasons which follow, Plaintiff's motion will be granted in part and denied in part.

**II.    Factual Background**

The crux of this action concerns the propriety of reimbursement payments made by the American Urban Radio Network ("AURN") to its majority partner, Sheridan, for certain authorized expenses. Although the factual background underlying this action is complex, much of the content of the parties' concise statements of material fact has little bearing on the instant

motion for summary judgment. Consequently, only those facts deemed necessary to resolution of that motion are recounted herein.[1]

AURN is a general partnership formed under Pennsylvania law. See ECF No. 108 ¶ 13. Sheridan is the majority partner in AURN, with a 51% ownership interest. Id. ¶ 15. NBN, with a 49% interest, is the minority partner. Id.

Pursuant to AURN's Partnership Agreement, control over AURN's management and operations is exercised by a Management Committee composed of two representatives appointed by NBN and two appointed by Sheridan. Id. ¶ 18. At all relevant times, Defendants Davenport Sr. and Lopes served as Sheridan's representatives. Id. ¶ 24. NBN representatives are Chesley Maddox-Dorsey ("Maddox-Dorsey) and Arthur Benjamin ("Benjamin"). Id. ¶ 23. In the event of a tied vote, the Partnership Agreement gives Davenport Sr. the power to appoint a temporary fifth member to break the tie. Id. ¶ 19.

Since 2008, all of AURN's radio programming has been supplied by Sheridan. Id. ¶ 29. The AURN Partnership Agreement provides that either partner may be reimbursed from AURN for the "actual costs" of supplying AURN's radio programming. Id. ¶ 27. Checks issued by AURN for reimbursement costs must be signed by one representative of each partner. Id. ¶ 32. As the content provider for AURN, Sheridan sought monthly reimbursement from AURN for its "Programming Costs" and a portion of its corporate overhead, couched in terms of "General and Administrative ("G&A") Expenses." Id. ¶¶ 34-35. Prior to 2008, Sheridan included a portion of certain employee salaries in the G&A expenses that it requested from AURN, apparently based on the amount of time that those employees actually spent providing services to AURN. Id. ¶¶

---

[1] These facts solely are based on undisputed facts in the parties' concise/counter statements of fact. Because the court finds these undisputed facts to be controlling, it need not look further into the parties' various contentions about whether other aspects of the record are "disputed" or "undisputed" facts.

41-42.  However, in late 2007, Sheridan changed its methodology for calculating the amount of those reimbursement costs.  Id. ¶ 58.  Pursuant to the new methodology, Sheridan pooled all of the revenue from all of its various subsidiaries and divisions, including AURN, and then allocated its total corporate overhead to each of those subsidiaries based upon the percentage of revenue that each subsidiary contributed to the pool.  Id. ¶ 61.  This resulted in Sheridan seeking significantly higher reimbursement payments from AURN.  Id. ¶ 67.

NBN immediately objected to Sheridan's new methodology for calculating reimbursement costs.  Id. ¶ 70.  NBN initially refused to co-sign reimbursement checks for the increased amounts invoiced by Sheridan.  Id. ¶ 79.  In 2008 and 2009, NBN resumed co-signing monthly reimbursement checks, but capped the amount of each payment at $175,000.  Id.  In 2010 and 2011, NBN co-signed reimbursement checks in an amount that was capped at $200,000 per month.  Id.  In 2012, NBN began co-signing checks for the full invoiced amounts, but noted on each check that the payment was being made "under protest."  ECF No. 111 ¶ 202.  NBN characterizes the capped payments for less than the full invoiced amount as an attempt to "compromise and resolve the issue."  Id.  Sheridan, in response, contends that NBN's failure to pay the actual invoiced amounts represents a breach of NBN's fiduciary duties to its partner.  ECF No. 111 ¶ 79.  This alleged breach forms the basis for Sheridan's counterclaim.

### III.     Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted.  FED. R. CIV. P. 56(a).  Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial.  Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007). The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. Celotex Corp., 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. Id. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

## IV. Discussion

### A. Counterclaim: Breach of Fiduciary Duty

In its amended complaint, NBN accuses Sheridan of improperly attempting to shift Sheridan's corporate overhead and employee salary expenses to AURN for the sole benefit of Sheridan. NBN maintains that Sheridan's actions represent impermissible self-dealing and a breach of Sheridan's fiduciary duties to NBN, its minority partner.

4

Sheridan counters that the Partnership Agreement explicitly entitles it to recover reimbursements in full for all expenses and programming that it provides to AURN and that the methodology implemented in 2008 simply reflects a more accurate calculation of those expenses. ECF No. 111 ¶¶ 64, 162. Sheridan contends that NBN's objections to the new methodology are groundless and characterizes the instant lawsuit as a vexatious attempt to interfere with Sheridan's recovery of its rightful expenses in violation of NBN's own fiduciary responsibilities.

It is axiomatic that "partners owe a fiduciary duty to one another." Clement v. Clement, 260 A.2d 728, 729 (Pa. 1970). To establish a breach of fiduciary duty under Pennsylvania law, "a plaintiff must demonstrate that a fiduciary relationship exists between the parties and that the defendant breached its fiduciary duty by failing to act for the benefit of the partnership, and instead, acted in a manner to promote his individual interests." Rahemtulla v. Hassam, 539 F.Supp.2d 755, 778-79 (M.D. Pa. 2008) (quotations omitted). Sheridan contends that NBN breached this duty by unjustly interfering with Sheridan's right to recover reimbursement for its actual costs in supplying AURN with programming.

In seeking summary judgment on Sheridan's counterclaim, NBN raises two arguments, neither of which is meritorious. First, NBN contends that "[t]he only act that occurred within the limitations period upon which Sheridan bases its counterclaim is NBN's filing of this lawsuit." ECF No. 107 at 10. NBN then cites several cases for the proposition that Sheridan cannot succeed on a breach of fiduciary duty claim by claiming only that NBN filed a frivolous lawsuit. However, in making this argument, NBN overlooks the portion of Sheridan's counter-claim in which Sheridan accuses NBN of imposing an arbitrary and unilateral cap on expense reimbursement payments in violation of the Partnership Agreement. See ECF No. 43 at 199-202; ECF No. 111 ¶ 200. NBN fails to address this contention in its summary judgment motion.

Thus, to the extent that Sheridan is accusing NBN of violating the Partnership Agreement (and its fiduciary duties) by arbitrarily withholding appropriate reimbursement expenses, and to the extent that NBN's actions fall within the appropriate statutory limitations period, NBN's arguments in support of its summary judgment motion are inapposite.

Secondly, NBN maintains that Sheridan's counter-claim must be dismissed because Sheridan has failed to plead actual damages. ECF No. 107 at 12. This is simply inaccurate. Sheridan's counter-claim seeks damages for the full costs of providing AURN with programming, to the extent that those costs exceed the arbitrary cap on costs imposed by NBN from 2008 to 2012. ECF No. 43 ¶¶ 199, 217; ECF No. 111 ¶ 200. Sheridan is also seeking punitive damages. ECF No. 43 ¶ 217. Finally, Sheridan is seeking to recover the attorney's fees and litigation expenses that it has incurred in the course of litigating NBN's dispute over cost reimbursements. ECF No. 110 at 10-11.

NBN contends that Sheridan cannot rely on attorney's fees to demonstrate actual damages, citing the "American Rule" that each litigant must typically bear its own attorney's fees. ECF No. 107 at 12. This precise argument was rejected in Airgas, Inc. v. Cravath, Swaine & Moore LLP, 2010 WL 3046586 (E.D. Pa. Aug. 3, 2010). In Airgas, the defendant argued that the plaintiff could not establish the actual damages element of its breach of fiduciary duty claim by relying on attorney's fees incurred in the course of the litigation. Id. at *5. As in the instant case, the defendant argued that this violated "the American Rule that each party bears its own legal expenses." Id. The court disagreed:

> Here, Airgas seeks attorneys' fees as compensatory damages and not as reimbursement of litigation expenses. In Axcan, a case that both parties heavily rely on, a client sought payment of the attorneys' fees it incurred while seeking an injunction against its attorney, who had violated its fiduciary duties by engaging in an impermissible conflict of interest. Axcan Scandipharm, Inc. V. Reed Smith, LLP, 2007 Phila. Ct. Com. Pl.

> LEXIS 78, at *9 (Pa.Com.Pl. Mar. 26, 2007). The Philadelphia Court of Common Pleas found that "[s]uch damages may be awarded to address the concrete loss that [Axcan] has suffered by reason of [its attorney's] wrongful conduct." Id. The court reasoned that "Axcan will never be made whole without payment of those attorneys fees it was forced to incur [to protect its interests]. In this respect, Pennsylvania law is more akin to the law of New Jersey [which does not follow the American rule]."

Airgas, 2010 WL 3046596, at *5-6; see also Fidelity Bank v. Com. Marine and Gen. Assur. Co., Ltd., 592 F.Supp. 513 (E.D. Pa. 1984) (concluding that the plaintiff had pleaded a "legally cognizable injury" in a breach of fiduciary duty case by alleging that it had "incurred costs in asserting its rights").

In sum, the Court concludes that Sheridan has adequately pleaded actual damages resulting from NBN's alleged breach of fiduciary duty. NBN's motion for summary judgment as to Sheridan's counter-claim will be denied.

### B. Affirmative Defense: Business Judgment Rule

NBN next seeks summary judgment with respect to Sheridan's invocation of the business judgment rule as an affirmative defense. The business judgment rule insulates certain corporate business decisions from being second-guessed through the benefit of hindsight in a lawsuit. Weaver v. Mobile Diagnostech, Inc., 2009 WL 1230297, at *2 (W.D. Pa. Apr. 30, 2009). As explained by the Pennsylvania Supreme Court:

> Courts recognize that managers have both better information and better incentives than they. The press of market forces . . . will more effectively serve the interests of all participants than will an error-prone judicial process. The business judgment rule expresses a sensible policy of judicial noninterference with business decisions made in circumstances free from serious conflicts of interest between management, which makes the decisions, and the corporation's shareholders. Not only do businessmen know more about business than judges do, but competition in the product and labor markets and in the market for corporate control provides sufficient punishment for businessmen who commit more than their share of business mistakes. The fact is that liability is rarely

7

> imposed upon corporate directors or officers simply for bad judgment and this reluctance to impose liability for unsuccessful business decisions has been doctrinally labeled the business judgment rule. Shareholders challenging the wisdom of a business decision taken by management must overcome the business judgment rule. For efficiency reasons, corporate decisionmakers should be permitted to act decisively and with relative freedom from a judge's or jury's subsequent second-guessing. It is desirable to encourage directors and officers to enter new markets, develop new products, innovate, and take other business risks.

Cuker v. Mikalauskas, 692 A.2d 1042, 1046 (Pa. 1997).

However, it is well-settled that the protections of the business judgment rule do not extend to "allegations of fraud or self-dealing, or decisions beyond the scope of authority . . ." Weaver, 2009 WL 1230297, at *3; Cuker, 692 A.2d at 1046 (business judgment rule applies "in the absence of fraud or self-dealing or other misconduct of malfeasance"). This is the precise nature of the claims asserted by NBN in the instant case. Specifically, NBN alleges that Sheridan's owners, Davenport Sr. and Davenport Jr., developed an unsupportable methodology for expense reimbursements in order to direct substantial payments from AURN to their own company, increasing their profits at the expense of NBN and AURN. NBN also alleges that Sheridan attempted to engage in additional self-dealing by passing a resolution to have AURN hire several Sheridan stakeholders into salaried positions. If factually proven at trial, these self-interested transactions would not warrant protection from the business judgment rule. Weaver, 2009 WL 1230297, at *3; Cuker, 692 A.2d at 1046. Accordingly, NBN's motion for summary judgment will be granted as to this affirmative defense.[2]

### C. Affirmative Defense: Preclusion

---

[2] In light of this conclusion, the Court need not address NBN's alternate argument that Pennsylvania's business judgment rule is not applicable to partnerships. See ECF No. 107 at 14-15.

The next affirmative defense targeted in NBN's summary judgment motion is Sheridan's assertion that NBN's claims in the instant action are somehow precluded by a 1997 injunction order entered by the Court of Common Pleas of Allegheny County. By way of background, both parties concede that they share a lengthy litigation history, most of which has little bearing on the instant motion. See ECF No. 111 ¶¶ 188-204; ECF No. 112 ¶¶ 188-204. In 1997, an Allegheny County Judge resolved one of the parties' previous lawsuits by permanently enjoining NBN from "obstructing, countermanding or otherwise interfering with" any prior or future decisions of the AURN management committee except in certain limited circumstances. ECF No. 111 ¶ 197. Sheridan contends that this injunction precludes NBN's claims in the instant lawsuit.

In order for res judicata to bar a claim, the prior litigation must have culminated in "a final judgment on the merits in a final suit involving . . . *the same claim* and . . . the same parties or their privies."). See U.S. v. 5 Unlabeled Boxes, 572 F.3d 169, 173 (3d Cir. 2009) (emphasis added) (quotation omitted). Similarly, collateral estoppel requires of a previous determination that "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." Id. (quoting Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006)).

A careful review of the allegations in the instant case reveals that they share little in common with those raised in the 1997 litigation. The 1997 litigation resolved a disagreement between NBN and Sheridan as to the appropriate allocation of managerial duties and powers under the Partnership Agreement. See ECF No. 107 at 17l; ECF No. 110 at 18. The instant litigation concerns self-dealing financial transactions and alleged breaches of fiduciary responsibilities. In the absence of any suggestion that the 1997 litigation actually adjudicated the

issue of whether Sheridan's alleged self-dealing constitutes a breach of fiduciary duty, the injunction issued by the Allegheny County Court has no preclusive effect in the instant matter. NBN's motion for summary judgment as to Sheridan's preclusion defense will be granted.

### D. Affirmative Defense: Non-Joinder

Finally, NBN challenges Sheridan's affirmative defense that NBN's claims are barred because it failed to join AURN as an indispensable party in this action. Determining whether a party is "indispensable" within the meaning of Rule 19 of the Federal Rules of Civil Procedure is a two-step process. First, the court must determine if the missing party is a "necessary party" within the meaning of Fed. R. Civ. P. 19(a). John Hancock Prop. & Cas. Co. v. Hanover Ins. Co., 859 F.Supp. 165, 168 (E.D. Pa. 1994). If the court determines that the missing party is "necessary", it must decide pursuant to Rule 19(b) "whether, in equity or good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

In determining whether a partnership is a necessary party in litigation between partners, courts have primarily focused on whether the plaintiff is claiming to have been harmed directly by the actions of its partner, or whether the plaintiff's harm is derivative of harm to the partnership. In Camden Securities v. Lupowitz, for example, one partner sued another partner alleging that the latter's negligence had caused substantial damage to an apartment complex that represented the sole asset of the partnership. Camden Securities, 500 F.Supp. 653, 654 (E.D. Pa. 1980). In light of the fact that the partnership itself was the entity directly injured by the defendant's negligence, the court held that "complete relief cannot be granted without making the partnership a party of record." Id. at 655.

On the other hand, where one partner alleges that it has been directly harmed by the defendant's misconduct, with injury to the partnership being incidental, courts have held that the

partnership is not a necessary party. Godine & Stunda, Inc. v. Reading Station Associates Ltd. Partnership, 1989 WL 49214 (E.D. Pa. May 4, 1989), is particularly instructive. In Godine, the court concluded that joinder of a partnership was unnecessary in the context of a breach of fiduciary claim between partners:

> At the outset, a critical distinction between Camden Securities and the instant case becomes apparent . . . In Camden Securities, one partner was suing the other partner for damage allegedly done to the sole asset of the partnership by the defendant partner's negligence.
>
> \* \* \* \* \* \* \* \* \*
>
> [Here], Count 1 alleges that Boyle breached his fiduciary duty to GSI. Under Pennsylvania law, a partner owes a fiduciary duty to another partner. After reading the complaint in its entirety, it is apparent that plaintiff is asserting harm to GSI directly as an entity, and not merely indirectly to GSI by harm to the partnership. Moreover, to the extent GSI is claiming that its liability for the partnership debts is a result of Boyle's alleged breaches of fiduciary duty, that claim is personal. In sum, unlike Camden Securities, the preponderance of the claims in the complaint are claims in which GSI is the real party in interest.

Godine, 1989 WL 49214 at *3 (internal quotations omitted); see also HB General Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1193 (finding that a partnership was not an indispensable party in a dispute between partners because the partnership did not have an independent interest in the case aside from the interests of the partners); Abel v. American Art Analog, Inc., 838 F.2d 691, 694–95 & n. 10 (3d Cir. 1988) (noting that when a partner does not assert the interests of the partnership, all partners are not indispensable parties).

In the instant case, as in Godine, NBN's breach of fiduciary duty claim is a claim in which NBN rather than AURN is the real party in interest. Consequently, AURN cannot be considered a "necessary" party within the meaning of Rule 19. NBN is entitled to summary judgment as to Sheridan's joinder defense.

**V.     Conclusion**

For the reasons set forth above, NBN's motion for summary judgment will be denied as to Sheridan's cross-claim for breach of fiduciary duty and granted as to Sheridan's affirmative defenses based on the business judgment rule, preclusion, and joinder.  An appropriate order follows.

Dated:  March 31, 2015

s/David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:   Roy W. Arnold, Esquire
    Mathew M. Wrenshall, Esquire
    Joseph A. Katarincic, Esquire
    Joseph M. Donley, Esquire
    Vincent M. Roskovensky, Esquire

   (*Via CM/ECF Electronic Mail*)